Good morning, everyone. We'll take the cases up in the order in which they appear on the docket. The first two cases have been submitted on the briefs. Capilla v. Garland, Aguirreano-Flores v. Garland. We'll take up Kari Lake v. Bill Gates, number 2316022. We proceed. May it please the Court. My name is Joseph Pohl, arguing on behalf of the Appellant Attorneys Mr. Parker and Mr. Olson and their respective law firms, and I will endeavor to reserve three minutes of my time. Thank you. The Appellant Attorneys are asking this Court to simply hold the District Court's December 1, 2022 sanctions order up against the elements of Rule 11. The elements of the rule to sanction an attorney are not present here. There are three primary substantive issues before the Court in this appeal. The three primary bases stated in the sanctions order to justify punishing the Appellant Attorneys for their amended complaint. These three are the paper ballots issue, the testing issue, and the speculation and conjecture issue. None of those three sustain sanctions in this matter. Two of the three issues I would draw the Court's attention to were included in the bar charges that were brought against Mr. Parker and Mr. Olson by the State of Arizona. Those two are the testing issue and the speculation and conjecture issue. We provided the panel decision in that matter to the Court by Rule 28J letter on August 28th, and in that bar proceeding, after a three-day evidentiary hearing, the hearing panel dismissed all charges against the Appellants, including the ones based on the testing issue and the speculation and conjecture issue. I would point out that though the State Bar of Arizona took a liberal approach in terms of bringing a large number of charges against Mr. Parker and Mr. Olson in that proceeding, even the State Bar of Arizona did not see the paper ballot issue to be one worth pressing ethics charges against Mr. Parker and Mr. Olson. Was there any sanction by the State Bar, Arizona Bar? There was none. So all charges were dismissed. And now, but what was the standard used for that versus the standard for Rule 11? The standard to prove a bar charge in Arizona is a clear and convincing evidence standard. However, the rules that were at issue there are essentially parallel to the rules here. The charges were based on the idea that there were misrepresentations or falsehoods in the pleadings or that there was a frivolous claim brought. So these are substantively the same issues, although the standard of proof for the State Bar was different than what is here. I'd like to talk about the paper ballots issue first. The sanctions order says that the amended complaint filed by Mr. Parker and Mr. Olson falsely alleged that Arizona does not use paper ballots in its elections. This conclusion by the district court applies a wrong legal standard and reaches a wrong factual conclusion regarding what that complaint says. The wrong legal standard here is that the district court read the complaint and drew inferences against the party that filed the complaint. It's familiar, I'm sure, that when reading a complaint, a district court is obligated to read it with inferences drawn in favor of the filing party. Here, the district court did the opposite of that. It drew inferences from ambiguous language against the appellant attorneys in order to find a falsehood. Is that the same rule for Rule 11, and it's clearly the case for 12? Yes. It's clearly the case for 12. I have not seen a case law in which a Ninth Circuit case applied the same principle to Rule 11. But the Rodick v. City of Schenectady decision by the Second Circuit in 1993 held that sanctions should be considered resolving all doubts in favor of the signer. I think the case that is most closely on point with this one factually, although it's not perfectly on point, is the Young v. City of Providence case from the First Circuit in 2005 where an attorney was sanctioned for a misrepresentation, alleged misrepresentation in a memorandum filed with the court. And the First Circuit reversed that because the alleged misrepresentation was in an inconsistent with what was said in the rest of the memorandum. So considering the memorandum as a whole, it found that you could not sanction the attorney for making a misrepresentation in the opening paragraph. The most interesting parallel between that case and this one is that the court explained that the alleged misrepresentation arose from a, quote, unexplained premise, end quote, that the attorney had drafted the memorandum with. So the attorney had failed to state something that it expected all counsels and the court understood. And so your position on the paper ballot issue is that the complaint never explicitly said that Arizona doesn't use paper ballots. There's some ambiguous statements in it and that the district court construed it the wrong way where you can construe it the other way. That's correct, Your Honor. But the district court said that the relief you were requesting was that the court order Arizona to do something that the complaint alleges it's not currently doing, that is, to use paper ballots. Why would you request relief in the form of an order requiring the county to use paper ballots if they were already using paper ballots and you were being truthful about that? There's two parts to the response to that, Your Honor. One is that in at least one place in the complaint, using paper ballots was included as a part of a litany of procedures that the plaintiff was required. You're talking about paragraph 7 where you say you want the court to order the defendants to collect and count votes through a constitutionally acceptable process and then you say this includes votes cast by hand and verifiable paper ballots that maintain voter anonymity. So there again, you're suggesting that they were not using paper ballots when, in fact, they were using paper ballots. And that paragraph, Your Honor, gets to the second piece of my response. So I guess what you're arguing is if you throw in enough that you can find ambiguity, then you can say anything you want to say in your complaint and sign it as though it's true. I don't think that's correct, Your Honor. The complaint construed as a whole was an attack on Arizona's use of optical ballot scanners. That was very clearly stated in several places. And in another place in the complaint, the complaint mentions the hand count, the audit of Arizona's 2020 paper ballots in Maricopa. So the complaint was clearly assuming that Arizona uses paper ballots. It took that as an unexplained premise that everyone understood. And as a result, it used this phrase paper ballots in certain places as a shorthand for hand counting. What exactly was the relief being requested in the complaint? The complaint was seeking a prohibition on the state of Arizona and Maricopa County using electronic voting machines, meaning ballot scanners and ballot marking devices, both of which involve paper ballots. So those forms of relief sought by the complaint were assuming that everyone understood that the state uses paper ballots. Why wouldn't an attorney be more explicit about that? It would have saved us all a lot of trouble if the complaint had mentioned that explicitly. But, again, the attorneys here took that as something that didn't need to be said in view of the equipment that was being challenged and the common understanding of every person in that Arizona courtroom that when they went to the polls, they filled out a hand-marked paper ballot. So just so I confirm, like, a voter fills out a paper ballot, and then Arizona currently uses optical ballot to count the ballots. Correct. So the electronic piece is the counting piece. And the point of the complaint was to get only hand count to the paper ballots. That was the thrust of it, Your Honor. Yes. The paper ballots would be filled out, and then they would be fed into the scanner. I don't understand the confusion then. In our view, Your Honor, if the complaint is ambiguous in any way, then Rule 11 would not permit a district court to move it. Well, I actually don't think it's ambiguous either way. I mean, it's kind of clear what the complaint was seeking. Yes. We don't think that there was any confusion among anyone in the courtroom or reading that complaint what the plaintiffs were seeking. District court judge was confused? I think the district court judge explains at the end of his order what concerned him, and he explains quite candidly that he's uncomfortable with the social implications of this kind of lawsuit shaking the confidence of people in the. . . I.e., that the lawsuit was brought for an improper purpose? The judge did not find that there was an improper purpose. He considers that issue and in the end says he's not finding that. But he was, at the very end of his order, he explains that he's concerned about the social implications of this kind of action in shaking the confidence of people in election equipment, whether it's intended or not, I think is the subtext. And that's just not a proper reason to impose Rule 11 sanctions. Yeah. I mean, I struggled with that. Are you. . . he says he wants to send a message. But Rule 11, at least the commentary says it could be for deterrent purposes. But this seems a little different than that, right? The deterrent purpose of Rule 11 is to deter attorneys from not meeting the two elements in it, which are you have to have a factual basis for your allegations and you have to have a legal basis for your legal claims. The rule is intended to prevent attorneys from bringing cases that are missing one of those two elements. Your clients were also sanctioned under Section, what is it, 1127? The district court did enter a 28 U.S.C. 1927 sanction also, Your Honor. That, in my view, is largely parasitic. Parasitic is maybe not the right word, but it's largely dependent on the court's assessment of the claims substantively as being frivolous. The court did mention one additional consideration in that 1927 ruling, which was the Purcell. The preliminary injunction. Yes. That she brought. Yes. And the situation there is that Purcell, as I think the court is probably well aware, provides very broad guidelines, and many courts have read that in many different ways. You can find cases where judges enter injunctions a week before election. You can find them where they get reversed for entering injunctions much earlier than that. So did the attorneys here have a good-faith legal argument that this was not a case that was brought too late? They did. They didn't ultimately prevail, but that's a Rule 12 consideration, not a Rule 11 consideration. Counsel, Judge Gould, if I could ask you a question. On both the Rule 11 sanctions and the sanctions under 1927, is it correct for us to review what the district court did on those issues for an abuse of discretion? That is the Supreme Court's standard for this kind of appeal, but the Supreme Court in that Cooter v. Gell case makes very clear that applying the wrong law or a clearly erroneous factual assessment are both abuses of discretion for purposes of Rule 11. And as our briefs point out, we think that all of the bases given by the district court were shot through with errors of law and with erroneous readings of the papers. I would point out, too, that the decision here was made based on the papers only, not based on a hearing, and there was not even oral argument. So this Court sits in the same position that the district court did in terms of reading those papers. So the 1927 sanction was based purely off the delay in bringing the motion for preliminary injunction? It's a little unclear. That's the one thing the district court mentions. I think he was also taking into mind his view that the complaint itself was frivolous, and so all the legal claims that made the complaint frivolous also made the MPI. So if we disagree with the district court in Rule 11, will that wipe out the 1927? I think it does, unless you find a different path to go down with respect for Purcell, which obviously I think the law there is not clear enough to sanction the attorneys in these circumstances. I've gone a little further than I had intended, and I'd like to reserve the balance of my time unless the Court has further questions. All right. Thank you. Ms. Krager? Thank you. May it please the Court? Emily Krager on behalf of the defendants in Maricopa County. The district court sanctioned the plaintiff's attorneys because they asserted false allegations in the complaint and brought frivolous claims with no evidentiary or legal basis. Plaintiffs lied to the Court about Arizona voters not voting on paper ballots. We just had a discussion here about this, and the clear statements from the complaint articulate that they stated that that was part of the basis for the relief they were seeking. Paragraph 7 of the complaint says that the relief they are asking for includes votes cast by hand on verifiable paper ballots that maintain voter anonymity. Paragraph 153 is more explicit. Plaintiffs seek for the Court to order an election conducted by paper ballot as an alternative to the current framework. These paragraphs are part of the basis for the complaint and part of the effort that the Plaintiffs' Counsel made in relying on the curling cases to talk about electronic voting machines. But didn't everyone understand that they were against the optical scan portion of the case? Well, the Plaintiffs' Counsel relied heavily on both of the curling cases. The issue in the curling cases — Yeah. There's a completely different system. Right. And so they were asserting that the vulnerabilities that existed in curling because of the use of ballot-marking devices and direct recording of electronic voting, that the same vulnerabilities existed in Arizona. And as a result — Yeah, but it's a different system. I mean, I think it just seems like you have to put your head in the sand to say, even though — because they cited a separate case with separate facts, a separate voting system, that they weren't operating under the context of what Arizona was voting on, which is a paper ballot with an optical counter. Right? Well, first, we raised this issue to Plaintiffs' Counsel before we even responded to the complaint in this case, saying, you've got it wrong. Arizona votes on paper ballots. You have this written in here. You have asserted that there are vulnerabilities to the system. But did you not understand what they were seeking? We understood that they were seeking and asserting that Arizona's voting system was vulnerable to hacking and manipulation that could change the ultimate vote tally.  And that their understanding of that was based on the system that was in place for how Arizonans tabulate votes. Yes. And that the hacking — You understood that Arizona counts by ballot — people vote by ballot, but uses an optical scanner to count. Well, certainly — So you were — Arizona was not confused about what they were — Certainly, Arizona understood that. And — And you understood that from the complaint, that they just wanted to change that system to — No, we didn't. We understood from the complaint that they were seeking relief that already existed in Arizona, and that's the very same issue that the district court said, too. The relief was conjunctive, right? You read those sentences, but there were — it was conjunctive relief, right? You didn't read the whole sentence. Correct, but they're — So they were seeking a whole series of things, not just that paper ballot. Correct, but their assertion was that Arizona has a computer-based voting system. Right. Correct? Which is not true. Arizona has a — It's not subjective, though, right? No, it's not subjective. Arizona has a paper — respectfully, Your Honor, Arizona has a — Who counts it? Who counts the ballots? As a paper-based system. Who counts the ballots? The ballots are counted by machine. That's correct. So a computer. So it's a computer-based voting system. Right. The tabulation system is. But there's a distinction in the case law, and the district court points out, that the vulnerabilities in the hacking that formed the basis for their complaint and why they came in were based on the vulnerabilities that exist in a system where people don't have the ability to confirm that the ballot says what they say it says. I agree with all that. I mean, that makes sense. I mean, I was on the prior panel, right? But it just seems silly to me that we're sanctioning someone for these, like, different degrees — semantic views of what's a computerized system. Well, I understand. If a computer isn't involved in the counting of — I mean, I think it's fair to say that's a computerized system. You might disagree with that, but that's open to subjective belief. The plaintiff's brief talks about reading these issues in context. And I believe when you read it in context, you understand that the attorneys are trying to pull the wool over the court's eyes, saying that the vulnerabilities that existed in curling and in the Georgia cases are the same ones that exist in Arizona when they don't. So do you think the district court actually believed that Arizona only had paper ballots and didn't understand that there was optical scanners? I think the district court understood that the plaintiffs brought a frivolous claim seeking relief that already existed based on asserting that Arizona had a computer-based voting system. Do you think? I think that the district court saw that the conduct that the plaintiff's counsel engaged in by bringing a claim purely based on speculation, asserting that the vulnerabilities that exist in a system that doesn't have paper ballots, that doesn't have paper backup, that doesn't have a voter-verified paper trail, are at issue in Arizona. It doesn't seem like the district court was misled. The district court understood how the voting system worked. Well, regardless, that was how they asserted and they brought a claim that didn't have any basis based on the system that exists in Arizona. And the paper ballot issue wasn't the only issue that they raised. They also asserted that Arizona systems weren't subject to neutral testing, which is untrue. And this was also neutral testing?  Well, they asserted, and as the district court said, you can say that it's not sufficient testing, but you can't argue that no testing exists at all. Well, they didn't say that. They did. They said no objective neutral testing, correct? They said no neutral that was not subject to neutral testing. If the testing Arizona does is neutral, then it's all subjective. If I can interject a short question. If the district court had a legitimate reason for imposing sanctions, even if reasonable minds could differ about whether that was the correct assessment or there was some other assessment, how does that stack up under an abusive discretion standard? Thank you, Your Honor. I agree. It is an abusive discretion standard. And Rule 11 and Section 1927 are about the court, the district court, reviewing what's presented to it and making determinations about whether the counsel acted appropriately in the case. You heard plaintiff's counsel relying on the panel, the disciplinary panel at the bar. It's an entirely different standard, and certainly the court, I assume, would not feel that the district court needs to be, their decision has to be confirmed in order for a sanctions to, in order to withstand that scrutiny. I agree that a court imposing monetary sanctions is quite different than disbarment. Certainly. And Rule 11 and Section 1927 provide the standard, provide that when an attorney signs their pleadings or filings, they have to have a reasonable basis and they have to have done a reasonable inquiry into the facts and evidence to support them. Can I ask you, are you defending the district court's view that the district court is allowed to send messages through their sanction for cases like this? The precise purpose, as the Supreme Court said in Cooter, is to deter baseless filings. Yes, but this is more than baseless filings in general. This is baseless filings based on specific substantive law, right? Questions, anything that can question the democratic process. Is that proper? I don't think that that's what the Court said. The Court said that you can bring legitimate claims evaluating Arizona's vote and tabulation system. But in this case, the claims that were brought were baseless. It is to make clear that the Court will not condone litigants ignoring the steps that Arizona has already taken toward this end and furthering further narratives that baseless undermine public trust at the time of increasing disinformation and distrust in the democratic process. It seems like it's — this is a message for anyone that wants to challenge the elections in Arizona. Is that right? Is that a proper — No, I would say that it's to people who want to baselessly challenge those things, which is exactly what Rule 11 is meant to police, essentially. That's not what he's saying. He's made it directly towards those that want to challenge elections. He made it directly towards those who want to challenge elections with no basis. I mean, yes, I agree that he did raise — So he did raise that — And then the statement makes no sense because all he has to say is you can't file a baseless challenge. He raised it in the context of these election law cases, which somehow you're not allowed to challenge. Well, he didn't rule that they acted with an improper purpose. That was not one of the rulings, and he didn't make that determination. So this is — you know, they rely on the King v. Whitmer matter, where the court had made a determination that the counsel in that case had acted with an improper purpose. That wasn't the case here. But secondly, it was the factual misstatements to the court, and it was the failure to do a reasonable investigation before bringing the case. And so while the court did mention — By that last sentence there, or that last paragraph there, which is trying to send a message to people that would challenge elections. Certainly. I mean, the court says why this is particularly problematic in the situation of challenging the election process and how important that is to people's view of — And that's proper, do you think? And election integrity. I don't think that the court has to look at these issues in a vacuum, but that doesn't take away from the fact that he determined that based on the explicit language of Rule 11 and the conduct of plaintiff's counsel, they violated their obligations to the court when they filed things with factual misstatements. Well, let me put it this way. Would it be an abusive discretion if the district court made its findings based off of the fact that he wanted to send a message to those that challenged elections? Well, that — I actually think that that's not an abusive discretion and that there is a — that the court — To have deterrence of challenging, like, certain areas of law. Well, the First Amendment doesn't protect you from making false statements in a court of law. Rule 11, and that's what's at issue here, is that they came into court and made those statements. Not what they did outside of court, not what they said, like as the King v. Whitmer district court had decided. That's not what the decision was based on here. It was based on the misstatements and what they said here. And I think if you review it, they didn't have an error of law. My question was if the district court considered whether or not he can send a message to those that would challenge elections as a basis for a sanction, is that an abusive discretion or is that permissible? If that's — if the reason is the court said you can't come in and ever challenge elections in Arizona, that's a problem. Correct. If the court says you can't come in and challenge anything baselessly, which is whether it's elections or any other issue, the problem is that you come into federal court and you bring a claim with no basis and you don't follow the guidelines in Rule 11. And whether the court pointing out that this was in the election context — For example, would you be okay if, like, the district court said — sanctioned someone for Rule 11 says, you know, you can't bring baseless civil rights actions. You can't bring baseless actions to vindicate your other constitutional rights. You can't bring baseless actions in federal court, whether it's civil rights — Would you be okay with the district court announcing that and as a sanction for a frivolous — or just after dismissing a civil rights action? I think identifying the type of case that it is and saying — Yeah, that's my problem. Right, and saying that that is — whether it's civil rights, whether it's election, whatever context it is, you have to follow the rules. And just because your clients are a politician, just because your clients can go out in the town square and say whatever they want and lie about issues, which they can do, and the government can't interfere with that, that's what the First Amendment says. I know. That's my problem. It just seems like the district court wanted to combat that. But in federal court, they're — but the district court didn't. The district court didn't say you acted with improper purpose. The district court didn't say what you're doing outside of the court. Edgefield has a question. I'm sorry. Thank you. I have a question for you, if you've completed your answer to Judge Bumate. I have. Thank you, Your Honor. My question is this. Could you review with me what you believe are some of the harms to society caused by baseless allegations being made, whether in an election context or any business context or civil rights context, in any context? I think when you go to law school and you take the bar exam and you become a lawyer, you take on the obligation of coming into court and bringing claims that have factual basis and being truthful to the court. And I believe that Rule 11 and Section 1927 are put in place to ensure that attorneys conduct themselves that way. And I think societally there is a belief that when attorneys — that people understand that that's the obligation of attorneys, and when they come into court and they make those statements, they're being truthful and they have a reasonable basis for them. So when attorneys come in and make untruthful statements and bring frivolous claims, I think that there's an assumption that the attorneys are following the rules. So when society sees that and they're not called out on that and they're not following the rules, then people misunderstand facts. They follow what's being said by the attorneys in court and just assume that it's accurate and correct. And has a reasonable basis. And I think that that's part of the system that we have here, that attorneys need to be trusting. Let me add another question related to that. In the state of Washington, which I'm most familiar with, when attorneys are admitted to the bar, they have to state an oath about how they're not going to make baseless claims. Do you know what the Arizona Bar Association requires of lawyers? Do you remember your oath? No, it's been a few years, admittedly. There are obligations on an attorney as an officer of the court. Correct. In every state. In every state. And certainly my understanding of the ethical rules that govern Arizona attorneys require that they bring claims with a reasonable basis and make truthful statements to the court. Okay, thanks, counsel. You're over your time, counsel. Thank you. Thank you. Mr. Polk? Thank you, Your Honor. To pick up where counsel just left off, the state of Arizona Supreme Court in the Richer case, which we also provided the court by 28J letter, took the opposite view of the district court here when it comes to litigation touching on elections. The Supreme Court explained that it helps public confidence in the system when people understand that if there's a dispute, they can bring it into court and be heard fairly. And so Arizona lawyers looking at the Richer case understand that you can bring a case, even an election case, that's even a long shot, as long as you have a legal and a factual basis for the claims that you are asserting. And that brings us back to Rule 11, which requires the same thing. Here, if you look at this complaint, there are places it could have been clearer, but these attorneys did not make a factual misrepresentation and there were arguments to support their legal position. They didn't end up prevailing, but that's a Rule 12 issue. That's not a Rule 11 issue. And for not just election litigation but civil rights litigation of any kind, attorneys need to be confident that if they walk into court with experts who are supporting their factual assertions and they've got a reasonable extrapolation from the existing law, that they're not going to get sanctioned even if they do lose. And so that's what we think is most important for the court to consider here today. All right. Thank you, counsel. Lakeview Gates No. 23-16022 is submitted.
judges: WARDLAW, GOULD, BUMATAY